Good morning, your honors. May it please the court. My name is Isaac Schweiger. I am counsel for plaintiff appellant Gabbi Lemos, and I would ask to reserve two minutes for rebuttal, please. This appeal follows the district court's granting of defendants motion for summary of judgment based on HECC preclusion. The standard of review is de novo. As this court is well aware, in 1994, the United States Supreme Court decided the case of HECC, which barred civil actions where success on the civil lawsuit would necessarily implicate the invalidity of an underlying criminal conviction, such as in a prosecution for resisting arrest, as we have here, where a necessary element for conviction is the lawful performance of the peace officer's duties. In this particular case, the factual background has been laid out in the But just to touch on the wave caps, in 2015, Gabbi Lemos was 18 years old. She was seen- You have 10 minutes, and we asked you to address a particular question particularly, and perhaps you should address it. I'd like to, your honor. So I'll skip straight to that. Having read the court's order focusing argument on the language from Beetz, I'll pick that up right there. So specifically the language that the court wanted argument and discussion on in Beetz is derived from Smith versus city of Hemet, and Smith, of course, derives from Susick, the- Okay, but just a minute. There were instructions in this case. We also asked you to take into account the instructions given to the criminal party jury in this case. So can we do that? Yes, your honor. And that's, of course, the main focus of this appeal is that here in this case, there were four theories of liability whereby they could convict Ms. Lemos of resisting. Three of those four theories of liability were distinct and separated from the use of force event and occurred before Ms. Lemos was injured. Because the court gave this instruction at the request of the prosecutor outlining these distinct theories of liability, but the jury only returned a general verdict. It's impossible based on the fact of the verdict alone to know which of these theories of liability the jury adopted. Does that matter given that Smith and Beetz told us that a jury verdict was different than a plea agreement? And in light of it being a jury verdict, we assume that it's a continuous action? So it does still matter, your honor. And the reason it matters is because that language, again, is derived from the California Court of Appeals case, Susick, and that was used in the Smith versus City of Hemet case. That's where this language comes from. However, at the time of Smith, which was a 2005 case, the California Supreme Court had not yet decided the case of Yount. Yount is 43 Cal 4885. Right. But then Beetz came after Yount. Yount is almost incomprehensible and internally inconsistent, I thought. But regardless of that, we're bound by Beetz. So I don't see how it makes it any different that Yount had a different take on Susick after Smith. Only perhaps, your honor, that Hooper, this court's opinion in 2011, didn't talk that language in Yount. But quite aside from what all these cases say, they say that the jury is going to be instructed in a certain way, and that isn't how this jury was instructed. In other words, Beetz repeats Smith. Smith says that a California jury is not going to determine particular incidents. It's going to look at the whole chain of events. But in fact, this jury was instructed to make a unanimous decision as to a particular incident. We don't know what it concluded as to which particular incident. But on the other hand, the assumption in Smith and Beetz as to how they were instructed, is that right? That is correct, your honor. And that you're saying is because of Yount. But whatever it was, that's not how they were instructed. That is correct, your honor. So what's the consequence of that for the heck question? Well, what we're left with is just that, the heck question. Does the conviction, or excuse me, would success on this lawsuit necessarily imply the invalidity of the conviction? And the answer to that is unequivocally, no, it wouldn't. Well, let me go back to the jury instructions for a moment. The jury instructions ask the jury, tell the jury that in order to find, to convict, they had to find that the peace officer was lawfully performing his duties and could not be unlawfully arresting or detaining someone or using unreasonable or excessive force in his or her duties, similar to what was in Beetz and the other cases. Was there anything in the jury instructions that divided up that determination into various segments, or is that just a unitary finding by the jury? I'm not sure that I understand your honor's question exactly, so I'm going to try, if I get it wrong, please redirect me, I would ask. The instruction that the jury received, as your honor stated, and one of the necessary elements that they would have to find before finding Ms. Lemos guilty was that the officer was lawfully performing his duty at the time and thus necessarily not engaged in the application of excessive force. However, because we have four distinct theories of liability, three of which are unconnected to the use of force, it is entirely possible, and in fact, we believe, that in this particular case, the jury elected not to even examine the use of force event, finding that Ms. Lemos had resisted the officer's lawful performance of his duties long before the force was ever used. So are you hypothesizing that the jury wasn't following their instruction, that they had to find that the peace officer was not using unreasonable or excessive force in his duties? No, your honor, I'm suggesting the jury did their duty, followed the instructions very carefully, and decided at the moment in time when Ms. Lemos resisted prior to the use of force, that the officer was lawfully performing his duties and that... Was there anything in the instructions guiding the jury to decide only at a moment in time, or you're just hypothesizing that? The four specific theories of liability, each discrete in time, suggests that was how the jury... And also that they were told that they had to agree which act the defendant committed. Right. The defendant, but not the police officer, correct? So they had to agree on the act by the defendant, but there was nothing on the act of the police officer. Is this sort of a general statement that they would have to find that the police officer was not using unreasonable or excessive force in his or her duties? Isn't that right? It is a general question as it is presented, but with the distinct theories of liability, again, it's entirely probable the jury examined each one by itself individually. And what's the difference counsel between the jury instructions and the jury verdict form used in Beetz from this case? Well, I don't know about the jury form, the verdict form in Beetz, Your Honor. I can tell you that Beetz, I believe, was correctly decided without even getting to this issue. As the court in Beetz stated, we had assault on a police officer and the officer responded within fractions of a second. That was the language in Beetz, with deadly force and killed one of his assailants. The litigant in Beetz brought this suit after having been convicted under a theory of aiding and abetting the person who assaulted the officer. And therefore the jury had to decide that the person she was aiding and abetting, the decedent, was in fact guilty of assault on a police officer, which they did. And as the court said, there was no parsing it out. There were no alternate theories of how the assaults occurred. It was one assault. It was with the truck moving towards the officer and in fractions of a second, the officer discharged his firearm. Isn't the best evidence of the continuous nature of the actions of the two individuals here, the officer and your client. Isn't that the body camera video, which seems to indicate the reason what jury I would imagine, hopefully, that the actions of your client before the takedown, as I call it, by the officer of your client to the ground, you continue to resist even after that. So at what point do we parse out some distinct factors to show the officer's if the actions and verdict here and instructions seem to indicate that the jury couldn't return a verdict of guilty unless it implicated, you know, some finding of no excessive force use. Again, your honor, if we only had standard instructions in this case, your honor's position would be exactly as it should be. But here we have a jury that is instructed specifically that there are four different ways they can find Gabby Lee most guilty of resisting, only one in which- I heard that, but it seems to me your better argument would be that even if your client continued to resist after the takedown, and excuse my use of that phrase, but you look at the video and your client was taken down when she tried to move away from the officer. Even after the takedown, she continued to resist from what I imagine the jury saw in that body camera. And the question in your better argument would be that even if she continued to resist, the use of any excessive force to stop that resistance would still be an exemption from the heck bar, wouldn't it? Yes, your honor, I believe it would. So, if a jury sees all of this and comes back with a verdict of guilty, should we defer to the jury's verdict that, at least from my reading of the instructions, California law, the cases that everyone has been talking about, seems this would be an inconsistent verdict of guilty if they would not find excessive force. I'm having trouble, I guess. It seems to me as if, look, you cited the right arguments as far as I'm concerned, and you even cited a case from my circuit, the Fifth Circuit, but Ninth Circuit controls here, and I'm having trouble distinguishing beats. So, I would suggest, your honor, that because, again, this language from beats is derived from Smith, which predates Yount, and this is quintessentially, it's application of the heck doctrine, which is federal law, to a quintessentially state law question, and that is... Go ahead. And that is here, does, as the language in beats suggests, does the jury's verdict necessarily determine the lawfulness of the officer's conduct throughout the case, more akin to what Yount is saying. And Yount says that even in one continuous course of conduct, we can have two distinctly, factually different scenarios. One that gives rise to criminal liability on behalf of a criminal defendant, and still maintain a separate civil liability on behalf of an officer. And that, of course... I'll leave the record, though, at 107 to 111, as the jury instructions, and the jury was specifically instructed, as was brought up earlier by Kuda, that a peace officer is not lawfully performing his or her duties if he or she is lawfully arresting or detaining someone or using unreasonable or excessive force in making or attempt to make an otherwise lawful arrest or detention. Isn't the jury verdict in that regard based upon such an instruction, at least legally? Not necessarily, your honor. And the reason I say not necessarily is we can have someone who is factually, legally resisting arrest, and then we can have an excessive force event that gives liability to that officer. And they're connected because we have the same genesis of this. I'm sorry. If you look at these as discrete incidents, and then your time is up, so... But if you... Unless my colleagues have questions. If you look at these as discrete incidents, as the jury was instructed to do, then you look for each incident as to whether the police officer was engaged in excessive force or not. And if the jury thought that there was resistance in incidents one, two, three, and there was no excessive force, as far as this verdict is concerned, it would have been consistent to convict even if you thought that there was excessive force as to the third incident. And therefore, there was no conviction for resisting arrest permitted. Is that right? That is our position. And Smith says that you have to be able to tell from the verdict whether they necessarily rely on a situation in which there was excessive force. And you can't here, because you can't tell that that isn't what happened, that they didn't rely on one, two, and three, and not four, unanimously. Correct. Right? Right. That's the end of your time for now. We'll give you a minute in rebuttal. Thank you. Very good. Thank you, Your Honor. And Mr. Osmond, we'll give you three extra minutes because you're a client. Good morning, Your Honors. May it please the court. My name is Richard Osmond, and I represent the appellees, Sonoma County, Steve Freitas, and Deputy Marcus Holton. The district court properly granted summary judgment based on the heck preclusion doctrine, because there was no temporal or spatial break between Lemos's resistive conduct and Holton's response. The unbreakable chain of resistance and obstruction only stopped because Holton finally was able to take her down and control her. I looked at the video, and I mean, if you're calling resistance, yelling at the police, I guess, but I didn't understand that to be resistance. Are you calling that resistance? That would be obstruction or delay. I mean, 148A1 is resisting, obstructing, or delaying an officer. So telling an officer, what about City of Houston v. Hill? That doesn't count. I'm sorry, I couldn't hear you. What about the Supreme Court case, I think it's City of Houston v. Hill, that says that it's not a crime to object to the police, to say no. Oh, it certainly isn't a crime to object in that way. But if you watch the 10-minute video, you have orders being given, you have orders being ignored, you have loud protests as that's happening, and then you also have this physical action. But the order was essentially, stop yelling at me, for the most part. Not only. You notice Deputy Holton several times says, come over here. Deputy Holton attempts to handcuff her earlier in the incident. There are numerous incidents throughout the 10 minutes. But yeah, so if you stop at the point that they were, when he, he at least touched her, whether he wouldn't, whether she knew he was trying to handcuff her, I don't know. But in any event, if you stop from that point on, when they get away from the car, until the point that she's walking into the house, and then he yells at her to stop walking into the house, that was several minutes, and there was no physical interaction at that point, right? You're correct. There's no physical contact during that time. However, at that point, Deputy Holton has already determined that he needs to arrest her for her conduct. And she's not coming over to him. She's not obeying orders. And she hasn't been searched. She hasn't been secured. And what happens is she starts, you know, going, he's trying to deescalate the situation as deputies are required to do. She starts to move away, moving towards the house. And that's when there's, you know, the last use of force. It's kind of like in Beats, where you have this series of acts. Well, in Beats, you actually had one act. You didn't have a series of acts. You basically had one incident. Well, you had actually in Beats, and that's why they quote the Smith case in there, and rely on the Smith case. There are a series of four different acts. And they talk about how when it's a single act offense, and it's comprised of multiple acts, each of which could result in a conviction. And that's so Beats did address those different acts. You had them fleeing from police, resisting as they tried to get into the other vehicle, ramming a CHP vehicle, and then reversing. And when they reversed, that's when the shots were fired by Officer Winters in Beats. Just like in this one, when Lemos finally decides she's going to try to flee towards the unsecured residence, and Deputy Holton tries to grab her wrist. She pulls away, and he takes her to the ground. And that's the act that finally stopped this continuous chain. Do we know what their jury instructions were in Beats? In Beats, what we do know the jury instructions were, is that in order to convict of the assault, the felony assault on an officer with a deadly weapon, and for the other, she was also convicted of felony resisting, that there had to be a determination by the jury that the officer was acting lawfully in the performance of his duties. So in Beats, it doesn't say which exact session that is. Okay, what Beats does say is there are not mutual factual bases for Morales' conviction for aiding and abetting an assault of a police officer with a deadly weapon. As Morales represented in her breach to the California Court of Appeals for conviction for assault on a police officer with, her conviction for assault on a police officer was based on her aiding and abetting GPR in the operation of the truck. So the opinion is pretty clear that there was only, there weren't different incidents, there was one incident. Well, there was one instance, but the jury gave a general verdict finding that the criminal defendant had committed felony resisting and had assaulted an officer with a deadly weapon. And the court goes on after they dispose of it, quickly saying, yeah, there's this one incident, that's what's argued by the other side. And then they go on to say that there was this fleeing, physical resisting, getting in the pickup, ramming the CHP car, and the court said, this is overwhelming evidence they were resisting and arresting officers. I'm really confused. Plaintiffs attempt to avoid this conclusion by arguing there were several possible factual bases for Morales' conviction. Now here we know there were several possible factual bases for the conviction because the jury was so instructive. First, there were not multiple factual bases for Morales' conviction. So it's a completely distinct situation because here the jury was specifically told that there were four possible factual bases for the conviction and that they had to unanimously agree on it. Is that wrong? I don't think, I don't think it's wrong that that's what was done. What Lemos was given that instruction in Beetz, like I said, the court did say that there was this one incident, the driving back, but the court also said that that was the culmination of a series of four different events. And the event finally ended when the, when officer Winters shot and killed the driver of the vehicle. And they went on and said that everyone agrees that that's what brought an end to the incident. And they didn't find any separation between, and they had just been talking about those four incidents. You notice also in Beetz, every time they talk about the criminal actions, they use the plural. They don't say criminal action, such as, you know, driving the car backwards. They say there was no separation between the driver's criminal actions, plural, and the alleged excess of the force. Instructions given in Beetz though says that on the charge that Morales assaulted a peace officer with a deadly weapon required the jury to convict Morales. The jury had to find that Morales acted willfully against a peace officer who was lawfully performing his duties as an officer and that the officer was not using unreasonable or excessive force in their duties. Isn't that part of the instructions in finding in Beetz? Yes. What about this Hooper which tries to tread over all this ground and which Beetz essentially ignores? The only difference is one's a jury trial and one isn't. Why should that matter? Well, when you have a jury trial, you have a criminal jury being instructed, such as in the Lemos case where they're told the instruction for resisting and delaying that the officer has to be performing their duties, that those duties include acting lawfully and they have to be lawfully performing their duties and they can't commit excessive force. So they're given those instructions. They look at the evidence and then they make a determination as to and in Lemos, they were also given the gram factors to give them a framework to determine reasonableness. And then the jury determines whether or not that officer acted reasonably, which is one element of the underlying crime. In other words, did Deputy Holton use excessive force? The plea has to have the same factual basis. So I really don't, I understand that Smith maybe made this distinction, but it made the distinction on the basis of a kind of instruction that wasn't given here. If you back out that instruction, what difference does it make? Because a plea has to be based on the same exact things as the jury is instructed. Otherwise, it's a bad plea. A plea has to be based on some underlying act that violated the law. But as they said in City of Hammett and Beetz talks about, if it's a single act with multiple offenses, a jury in issuing a general verdict is not looking at, or is not going to take each one of those individual acts. They don't specify which one it is. They actually give a general verdict and that verdict necessarily determines then that the officer didn't act unlawfully. You know, appellate's counsel referred you to the Yount case. The Yount case goes into great detail talking about the policy issues behind a plea and you enter a plea that doesn't specify which act because you don't want to be possibly getting prosecuted multiple times for the same incident. In other words, you plead to act one. You don't plead anything else. You're tried on act one. So it's not really fair for the criminal defendant to be able to do a general plea and then rely on that general plea to later defeat the Section 1983 claim as Lemos basically attempts to do to here. The big difference is, of course, Lemos was criminally convicted. Yeah, people who plea are also criminally convicted. Again, they're criminally, people who plea are criminally convicted. The jury does not make a determination as to which of the acts that make up that single act offense is the basis for that. But in this instance, the jury was required to agree unanimously on which of four specific acts, not the whole course of conduct, were criminal and whether they were criminal depended on whether there was excessive force by the officer. Now it's true that they weren't required to tell us which one of the two or three or four of the four they relied on. But precisely because we can't figure that out, the larger message in Smith, which is that if we can't figure it out, we can't say that it necessarily rested on fiction that would have to be undermined by a 1983 action seems to come into play. I don't, it seems to me there's a fundamental difference between what was said in Smith, that the jury's actions determines the lawful officer's actions for the whole course of the conduct, and what was decided here, which was, as instructed, which was a discrete one of four, two of four, three of four, four of four, and we don't know which. Suppose the jury had decided that she was guilty in the one, two, and three incident, but not the fourth, and unanimously decided that. That's a possibility, right? Right. So, therefore, under Smith, since we can't know that, we can't say that's necessarily undermining, since the excessive force claim rests on the, focuses mostly on the fourth. There's no way to say that we are necessarily undermining the criminal verdict by allowing the 1983 claim to go forward, is there? I think we are, because what we're talking about here is a continuum of conduct. And while we have four separate acts that could form the basis, it's a continuum, and you can't separate them out. Except that the jury was required to separate. That's the part I don't understand. The jury was directed to separate them. It was not told it could rely on the continuous course of conduct, was it? No, the jury was told there are four different acts within this single act that you can rely on in coming to a verdict that, you know, that would be the basis of those acts. You have to unanimously agree. If there hadn't been that unanimous instruction, I would agree with you. One of them could have thought it was one, and one of them could have thought it was another, but they weren't allowed to do that. But they could, they unanimously agree on all four, and necessarily... They could have, but they also could have unanimously agreed on one, two, and three, and not four. And we won't know that because it's a general verdict. Exactly, and in that situation, Smith says that we can't say it's necessarily undermining the verdict, and therefore, no heck problem. And Smith says, yes, in the context of a plea where the jury has not done anything to examine. There's no jury that's examining the conduct of the officer here in Beetz or in Lemos. You have a jury carefully examining the conduct and making a determination that that officer's conduct was lawful. In Hooper, in Smith, you have no such determination. The jury never looks at anything. It's a plea. We have one more, if you want. I'm sorry, I lost your... I said, I think you have one more minute of the extra time I gave you. Okay. Why not? Well, I was in conclusion. I just, the, you really, what you have here is you have a continuum of conduct with no temporal break between this continual conduct that goes all the way through Deputy Holton using force and taking Lemos down. And based on the jury, the Beetz case, when the jury convicted Lemos of violating 140H, they necessarily didn't look at which, they necessarily said that everything that Deputy Holton did during the incident was reasonable and did not constitute excessive force. And therefore, the heck doctrine should apply and summary judgment should be affirmed. Thank you. This is Kwame. It looks like Judge Berzon's connection is frozen. We're going to go ahead and mute the stream until we get her back. Can you give her a call and just who she is? Hello, Judge Berzon. I can hear you now. Let me see if I can get back on so I can see you. Okay. I'm sorry. The whole thing crashed as it did earlier. All right. Let's see. So I'm trying to rejoin and I'm having trouble figuring out how to do that. We see you and we hear you. So you are in the Zoom. I can't see or hear you. All right. Perhaps the... Okay. Okay. Are you back? Yes. And I'm sorry that my... It's the whole computer system is unstable and crash, not the Zoom. But okay, go ahead. And I'm sorry, Mr. Osmond. I don't know where you lost me. It looked like it went dead right after I said thank you. All right. Well, then fine. Thank you, too. And this technology has limits. I'm sorry. So you heard my concluding words? I'm not sure I did. We may do them again. Why don't I do it again? What I said is during this 10-minute continuous transaction, there was no temporal break between criminal actions of Ms. Lemos and Deputy Holton's use of force that culminated in him taking her to the ground to bring an end to the incident. The jury convicted Lemos of violating 148, which necessarily determined the lawfulness of his actions throughout the incident. So this matter should be barred by the HAC doctrine, and summary judgment should be affirmed. Thank you.  Mr. Schwager. Thank you, Your Honor. And I would say that the defense in this case has not shown that the criminal conviction necessarily would be implicated. It's validity implicated by virtue of a successful prosecution on the 1983 claim for the reasons that we have discussed. I have a procedural question. Is the record from the criminal trial, was it ever introduced in the 1983 action? In terms of, I mean, I would be interested in reading the closing statements. I note that the instruction sheet that we have is not actually in the instructions that's read to the jury. It's a preliminary draft with handwritten notes on it. Is that all we've got that was ever introduced in the district court? Yes, Your Honor. The proceedings of the criminal trial were not part of the record that the district court reviewed. I believe that Judge Gonzalez-Rogers lamented that they were not part of the record either. Okay. Thank you both very much. It's an interesting case.  Vasquez-Romero v. R.
judges: Berzon, Ikuta, Lemelle